Opinion by
Will-son, J.
§ 575. Common carrier; liability of, for injury to goods; defense that injury was caused by act of God; case stated. On June 16, 1883; appellees shipped over appellant’s line of railway, from Galveston, Texas, to Omaha, Nebraska, one car load of melons and green corn. The goods were loaded into a refrigerator car at Galveston by appellees, and well iced, and they furnished appellant ice to be used in icing the same en route. The ■car reached Atchison, Kansas, without delay, June 21, 1883. It could proceed no further because of an unprecedented storm which had prevailed, and was still prevailing, in that section of country, rendering transportation over appellant’s line of railway temporarily impracticable. On the morning after the car reached Atchison, appellant’s agent examined its contents, and found that the same were damaged and decaying. He caused the same to be iced, and did all he could to prevent further injury, but the goods continuing to decay, and it being impossible to proceed further on the journey, he sold the same on June 23, the third day after their arrival at Atchison, for $65, that being the best price he could obtain therefor, after using reasonable diligence. Appellees brought this suit to recover the value of the goods, the amount of the freight thereon w'hich had been prepaid by them, and the cost of the ice furnished by *508 them. They recovered judgment for the full amount sued for, together with legal interest thereon from the date of the sale of the goods at Atchison. Appellant, by special plea, admitted the contract of carriage, and a failure to deliver the goods, but alleged, in avoidance of liability, that the failure to transport and deliver in accordance with the contract was attributable solely to the act of God — that is, to the said storm and its effects. It is abundantly established by the evidence that the goods were transported without delay, as far. on their route as Atchison, and that owing to the storm they could not be carried farther for several days. This being the case, if there was no injury to the goods occasioned by appellant’s negligence, prior to their arrival at Atchison, appellant cannot be held liable; because the subsequent delay was unquestionably caused by the act of God, and for injury which resulted alone from such delay, no responsibility attaches to the carrier.
§ 576. Same; act of (xod must be the proximate cause of the injury. But evidence was admitted which tends to prove, and which the trial judge held did prove, that the injury to the goods had its inception before the delay caused by the storm, and that such delay was not the proximate cause of the injury, but that the goods would have arrived at Atchison sound and in good condition, if the same had been properly iced and cared for on the route. “A common carrier is responsible for the safety of the goods intrusted to him, and bound for their delivery in as good condition as he received them, at the place to which he undertook to carry them, against all hazards, excepting losses caused by the act of God or the public enemy.” This is the general rule, briefly stated. But there are other well settled exceptions; that is, he is not liable for losses or injuries from any inherent defect of quality or vice of the thing carried; nor for those caused by seizure of the goods under legal process; nor for those caused by some act or omission of the owner. [3 Sutherland, Dam. 235, 236.] When the act of God is relied *509 upon to excuse the carrier, it must be shown to be the proximate cause of the loss, and without any concurrent ' negligence on the part of the carrier. [Hutch, on Carriers, §§ 179, 180.]
§ 577. Same; duty to preserve property. Safe custody of the property intrusted to him is as much the duty of the carrier as its conveyance and delivery, and whenever the situation or condition of the goods, from accident or from any cause, becomes such as to require especial care or attention, the carrier must put himself in place of the owner, and do for them all that might reasonably be expected of a prudent and careful person, and if necessary, it would be his duty to incur any reasonable expense in their preservation. When they become exposed to danger of deterioration or destruction from their own inherent infirmity, or from any cause, it is his duty to employ at least a reasonable degree of skill and diligence to preserve them, and if he fail to do so, it will be accounted negligence, and he will be liable for the loss, though the actual proximate cause of it may be one for which, but for his negligence, he would be in no wise responsible. [Hutch, on Carriers, §§ 323, 324.] Now, in this case, it appears, from the evidence, that the goods were fresh and sound when placed in the car at Galveston. They were carefully loaded and iced. It was proved that if they had been iced en route they would have remained sound and uninjured during the journey to their destination. It is evident that when the goods reached Atchison they were in a damaged and decaying condition. What was the cause of this condition? It was not the act of God. It was not because of any inherent defect or vice in the goods, because they were fresh and sound when they left Galveston, and would have remained so with proper attention. The only answer to the question that is reasonable and reconcilable with the evidence, is, that the goods' were not iced on the journey after they were loaded at Galveston, and that this neglect caused their deterioration and decay. There is nothing that con *510 tradicts this conclusion. No effort was made by appellant to show damage from any other cause except the-act of .God, or to show that the goods had been iced on the journey. Appellees furnished the ice for the purpose-of icing them, and the contract was that appellant was-to cause the ice to be applied. But in the absence of such-, contract, it was the duty of appellant to see that the-goods were kept in a condition that would prevent them from injury, if that could be accomplished by the use-of reasonable skill and care.
§ 578. Negligence of carrier; need not be specially pleaded, when; burden of proof as to carrier's defense that injury was caused by act of God. But, it is said, the-only issue made by the pleadings was as to the conversion of the goods at Atchison, and that this conversion-is fully met and justified by the fact that it resulted alone from the act of God. We do not understand appellees’ cause of action to be restricted by their allegations to the conversion at Atchison. It is alleged in their petition that “appellant, wholly neglecting its-duty, and unmindful thereof, not only failed and refused to comply with its obligation, but converted to its own use said car load of articles,” etc. This was sufficient to admit proof not only of the conversion, hut of loss by other breach of the contract, and is sufficient to warrant-the judgment of the court based upon the negligence of appellant occurring prior to the conversion. Furthermore, to justify the conversion of the goods, it was incumbent upon appellant to establish that it was occasioned proximately by the act of God, this being appellant’s only defense. “In case of the loss of property or injury to it, the burden is on the carrier to exonerate himself by proof that it happened by one of the causes for which he was not answerable. Proof of the delivery of the goods, and their loss, or injury to them, while in the carrier’s hands, makes out a prima facie case against him. But when it appears in a suit against a carrier that the loss or injury proceeded from one of the ex *511 cepted causes, then the burden is on the plaintiff to show that the injury or loss resulted nevertheless from the negligence or fault of the carrier.” [Sutherland on Dam. 236.] Applying these rules to this case, the judgment holding appellant liable for the loss of the goods is correct. Appellant’s defense was not proved. It was not the act of God that occasioned the loss. This defense not being sustained, appellant was liable for the loss without proof of negligence. But, even had this defense been proved, it was competent for appellees to set it aside by proof of negligence or other facts establishing that the loss was not in fact proximately caused by the act of God, and this -without specially pleading the same. Such proof was admissible to rebut, disprove and destroy the evidence adduced in support of the special plea, c-
§ 579. Damages; stipulation in contract.as to. In the bill of lading it was stipulated that, in the event of the loss of the property, “the value or cost of the same at the point of shipment shall govern the settlement.” In accordance with this stipulation, the court rendered judgment for the market value of the goods in Galveston, which was greater than the cost of the same. Held, that this was not error, but was authorized by the contract.
§ 580. Freight charges prepaid, recoverable by shipper, when. It was not error to render judgment for appellees for the amount of freight paid by them on the goods. It is only when the plaintiff recovers against the carrier the value of the goods at the point of their destination, that the freight unpaid is to be deducted in estimating the damages. [Hutch, on Carriers, §§ Hi et seq., 769; 3 Sutherland, Dam. 237; Field, Dam. § 378; R. R. Co. v. Nicholson, 61 Tex. 552.] “If the freight be paid in advance, and the goods be not carried, there is a failure of the consideration, and the money may be recovered by the shipper, unless it be otherwise agreed, or the failure to carry be attributable to the fault of the party who owns or controls them.” [Hutch, on Carriers, § 471.]
*512 February 25, 1885.
§ 581. Interest on damages. It was not error to allow the legal rate of interest on the amount of the damages adjudged, from the date of the loss of the goods. [Ante, § 313; R. R. Co. v. Jackson, 4 Tex. Law Rev. 253; 3 Sutherland, Dam. 238.]
Affirmed.